IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs May 16, 2006

**RILEY BOLDING, ET AL. v. DENTIS SISSON, ET AL.**

**A Direct Appeal from the Circuit Court for Madison County**
**No. C-02-23     The Honorable Roger A. Page, Judge**

---

**No. W2005-01507-COA-R3-CV - Filed June 14, 2006**

---

This is an appeal from a judgment entered on a Jury verdict.  The appeal arises out of a commercial real estate sale and involves the alleged misrepresentation of a restrictive covenant attached to property at issue. The Jury found that the Defendants/Appellants intentionally and negligently misrepresented the restrictive covenant that applied to the property. Finding that there is no material evidence to support the Jury's finding that Plaintiffs/Appellants' reliance upon Defendants/Appellees' representation was justified, we vacate the Judgment entered on the Jury Verdict.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Vacated**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

A. Russell Larson of Jackson, Tennessee for Appellants, Dentis Sisson and Cathy Sisson

Shannon A. Jones of Alamo, Tennessee for Appellees, Riley Bolding and Pam Bolding

**OPINION**

In 1999, Riley Bolding and Pam Bolding (the "Boldings," "Plaintiffs," or "Appellees") were in the market for real estate on which to build a commercial truck washing business. Dentis Sisson and Cathy Sisson (the "Sissons," "Defendants," or "Appellants") were offering for sale ten acres of land in Madison County, Tennessee (the "Property").   The Boldings and Sissons ultimately agreed to the sale of two acres of the Property for $66,500.00.   On November 23, 1999, the Boldings and the Sissons entered into a sales agreement for the two acres of the Property.   The sales agreement contained contingencies, including "approval by planning commission to install truck wash on property."   The record indicates that the Boldings did not obtain the approval of the planning commission prior to the closing; however, the closing went forward on January 4, 2000.

Thereafter, the Boldings began clearing the land of trees to make room for their proposed truck wash and adjacent management office. A few days after the clearing began, one of the neighbors of the Property contacted Jack Hall, the Madison County Building Commissioner, to complain that the construction was in violation of a restrictive covenant placed on the Property limiting it to residential use. After a neighbor complained to Mr. Bolding directly, Mr. Bolding contacted Jack Hall to verify the information he had received from the neighbor concerning the restrictive covenant. Thereafter, the Boldings discovered that there was, in fact, a restrictive covenant on the Property, limiting it to residential use. The Boldings' attempt to have the restrictive covenant lifted was unsuccessful.

On January 23, 2002, the Boldings filed a Complaint in the Circuit Court at Madison County, Tennessee against Jim and Joyce Henley, Real Estate Now, LLC, the Bank of Jackson and R. Brad Hancock, as Trustee, and Dentis Sisson and Cathy Sisson. All defendants, except the Sissons, were granted dismissal by summary judgment or directed verdict during the course of the proceedings. The Complaint specifically alleges the following against the Sissons:

> 10. Plaintiffs aver that the sale was conditional upon Plaintiffs being allowed to install a commercial truck wash on the property.

> 11. Plaintiffs aver that Defendants, Dennis [sic] Sisson and Cathy Sisson, represented to Plaintiffs that the property was zoned for commercial use and that the Plaintiffs would be allowed to use the property to install a commercial truck wash.

> *                *                *

> 15. Plaintiffs aver that Defendants Dennis [sic] Sisson and Cathy Sisson knew or should have known that the property was encumbered by restrict[ive] covenants restricting its use to residential only and was not zoned for commercial use.

> *                *                *

> 17. Plaintiffs aver that Defendants Dennis [sic] Sisson and Cathy Sisson knowingly, intentionally and/or negligently or fraudulently misrepresented to Plaintiffs that the property was zoned commercial and could be used as such.

> *                *                *

> 22. Plaintiffs aver that Defendants Dennis [sic] Sisson and Cathy Sisson breached the contract entered between the parties because the planning commission failed to approve the installation of the truck wash by Plaintiffs.

On April 9, 2002, the Sissons filed their Answer, in which they denied the material allegations of the Complaint. On March 12, 2003, the Sissons filed a Motion for Summary Judgment and a Statement of Material Fact and Affidavit in support thereof. The Boldings filed a Response to Defendants' Statement of Material Fact on October 2, 2003. The Sissons' Motion for Summary Judgment was denied by Order of December 3, 2003.

The matter proceeded to trial before a jury on November 11-12, 2004 . The Jury returned a verdict in favor of the Boldings. Although the Jury found that the Sissons were not in breach of contract, it did find that the Sissons made both negligent and intentional misrepresentations to the Boldings concerning the restrictive covenant on the Property. Consequently, the Jury awarded damages to the Boldings in the amount of sixty thousand three hundred and two dollars and thirty-eight cents ($60,302.38). Judgment on the Jury Verdict was entered on December 20, 2004. On December 29, 2004, the Sissons filed a Motion for New Trial, which was denied by Order of June 3, 2005.[1]

The Sissons appeal and raise the following issues for review as stated in their brief:

1. Whether there was sufficient evidence at trial to support a verdict of misrepresentation and negligent misrepresentation on behalf of Dentis Sisson.

2. The Effect of Waiver of Contingencies in a real estate contract by the purchaser of property.

3. Duty of closing attorney to disclose to purchasers of restrictive covenants of record which could affect use of property.

Where, as here, a trial judge has approved a jury's verdict, our standard of review is whether there is any material evidence to support the jury's verdict. Tenn.R.App.P. 13(d); **Barnes v. Goodyear Tire and Rubber Co.**, 48 S.W.3d 698, 704 (Tenn.2000). When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence. **Crabtree Masonry Co. v. C & R Constr., Inc**., 575 S.W.2d 4, 5 (Tenn.1978); **Black v. Quinn**, 646 S.W.2d 437, 439-40 (Tenn.Ct.App.1982). Appellate courts shall neither re-weigh the evidence nor evaluate the credibility of witnesses. **White v. Vanderbilt University**, 21 S.W.3d 315 (Tenn.Ct.App.1999). If the record contains "any material evidence to support the verdict, [the jury's findings] must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury." **Crabtree Masonry Co.**, 575 S.W.2d at 5.

---

[1] Pursuant to Tenn. R. App. P. 3(e), the Motion for New Trial specifically sets out all of the issues raised on appeal.

Turning to the first issue, we address whether there is sufficient evidence in the record to support a verdict of negligent misrepresentation and/or intentional misrepresentation. In *Robinson v. Omer*, 952 S.W.2d 423 (Tenn.1997), our Supreme Court discussed the essential elements of a negligent misrepresentation claim:

> Tennessee has adopted Section 552 of the Restatement (Second) of Torts"as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn.1991). Section 552 provides, in pertinent part, as follows:
>
>> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. Restatement (Second) of Torts, § 552 (1977) (emphasis added).

> *Id.* at 427 (emphasis in original).

In discussing the requirements for recovery under Section 552, this Court has stated that liability in tort will result, despite the lack of contractual privity between the plaintiff and defendant, when:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
> (2) the defendant supplies faulty information meant to guide others in their business transactions; and
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991); *accord Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995); *Robinson v. Omer*, 952 S.W.2d at 427.

In addition to the four *prima facie* requirements for negligent misrepresentation, intentional, or fraudulent, misrepresentation requires a fifth element, which is that "the false representation [must be made] either knowingly or without belief in its truth or recklessly [with regard to its truth]." *Metropolitan Gov't v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App.1992); *see also* Restatement (Second) of Torts § 525 (1977). "[A] person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn., 1992).

For either a finding of intentional misrepresentation or negligent misrepresentation, a plaintiff must produce evidence that his or her reliance upon the misrepresentation(s) was justified. It is undisputed in this record that the restrictive covenant at issue here was of public record. In fact, the Warranty Deed indicates that the restrictive covenants are of record in "Trust Deed Book 784, page 164 as amended in Trust Deed Book 771, page 536 and Trust Deed Book 1040, page 455 in the Register's Office of Madison County, Tennessee...." This is a fact that Mr. Bolding admits in his testimony, to wit:

> Q. ...Well, let me ask this question: You've [Mr. Bolding] done an investigation and you understand that the restrictive covenants that are preventing you from building your truck wash are actually written into the deed that was at the closing; is that right?
>
> A. Yeah.

In *Winstead v. First Tennessee Bank N.A.,* 709 S.W.2d 627 (Tenn. Ct. App. 1986), plaintiffs purchased a parcel of real property on which they planned to relocate their appliance store. *Id*. at 629. In so doing, they relied upon representations from their real estate agent and their attorney that the parcel was zoned for commercial use. *Id*. However, similar to the case at bar, the property was also subject to subdivision restrictions that prevented commercial use of the property, a fact that was imparted to plaintiffs' attorney but which plaintiffs did not discover until after the sale. *Id*. at 630. When plaintiffs learned that they could not relocate their store to the newly purchased property, they sued their attorney, their real estate broker and the seller, among others, to rescind the agreement and recover their down payment and damages, alleging fraud and/or negligent misrepresentation. *Id*. The trial court granted judgment to plaintiff finding that defendants defrauded them by failing to disclose that the property could not be used for its intended purpose. *Id*. In reversing the trial court's judgment, this Court stated that purchasers of real property are:

[c]hargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the fact so contained. *Hall v. Hall*, 604 S.W.2d 851 (Tenn. 1980). See also *Teague v. Sowder*, 121 Tenn. 132, 114 s.W.484 (1908).

*Id*. at 632 (citing). The *Winstead* Court further reasoned:

If one who is in possession of all material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access. In Pakrul v. Barnes, supra, the Court quoted the following language with approval from 91 C.J.S. Vendor and Purchaser § 68, at 945-6:

[W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness. Unless the representations are such as are calculated to lull the suspicions of a careful man into a complete reliance thereon, it is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he cannot thereafter assail the validity of the contract for fraud, misrepresentation

> or concealment with respect to matters which should have been ascertained, particularly where the sources of information are furnished and attention directed to them, as, for example, where the source of accurate information is indicated or referred to in the contract.

*Id*. at 633

It is undisputed that the sales agreement signed by the Sissons and the Boldings specifically provided "conveyance shall be by warranty deed transferring good and merchantable title; subject to any restrictions, zoning ordinances, set-back lines and usual and customary easements of record." Moreover, the warranty deed from the Sissons to the Boldings set out with particularity the recorded subdivision restrictions and easements. Thus, it is clear that the Boldings were made aware that there existed subdivision restrictions on the property, and yet, they took no action whatsoever to determine what those restrictions were.

Based on the above, there is no material evidence to satisfy the requirement that the Boldings justifiably relied upon any information, if there was information by the Sissons. At the very least, they had equal knowledge by virtue of the restrictive covenants of record. Failure to prove this necessary element is fatal to their cause of action in this case.

Accordingly, the judgment of the trial court is vacated. The remaining issues are pretermitted. Costs of the appeal are assessed against the Appellees, Riley Bolding and Pam Bolding.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.